Hulsh, Hulsh, Hulsh, Hulsh, Hulsh, Hulsh, Hulsh, Hulsh. Good afternoon. Good afternoon, Appellate Court First District Court of Appellant Session, the Sixth Division, the Honorable Justice Sharon O. Johnson presiding, case number 22-1521 Vera Hulsh versus Mario Hulsh. Thank you. Good afternoon. Good afternoon. I'm Justice Sharon O. Johnson and I'm joined by my colleagues, Justice Carl A. Walker and Justice Sanjay T. Taylor. We are also joined by several students from the Chicago Academy for the Arts, who are serving today. So I'd like to begin by asking the Appellants Council to state your name for the record. Good afternoon, Your Honor. My name is Tom Kaniok from Schwartz and Kaniok here in Chicago. I represent Vera Hulsh. I'm glad to hear we have students and I have, while off camera, our paralegal Cole Hamilton, who used to be a student. Okay, very good. And how much time would you like to reserve for rebuttal, counsel? Five minutes if I need that. Okay. And Appellants Council, your appearance for the record, please. Good afternoon, Your Honor. Your Honors. My name is Peter Orgauer and I represent the defendant, Maya Hulsh. Okay, very well. Thank you very much. You may proceed, Attorney Kaniok. Thank you. May it please the Court. I learned a lesson in an oral argument years ago when I started talking about the facts and the presiding justice stopped me and gave me 30 seconds of my facts, better than I could possibly state them. So I'm going to assume that you know your business, you've read the briefs, and the facts are not in dispute. It's a 615 motion. We have alleged substantial assistance, etc, etc. Unless you have some questions about the facts, I'm simply going to move on. Because we have an audience, if you could please give us the 30 second facts. Sure, that's not a problem at all. My client is a TV personality in Bratislava, Slovakia. She married a man named Jeremy Hulsh, who is the son of one of the defendants and the brother of another defendant. The mother, we have alleged, has paid for a kidnapping, took the kids from Bratislava, Slovakia, into Hungary, into London, into Canada, and then into the state of Illinois. We have alleged that the mother, with facts supporting it, that the mother has actually paid for the whole thing. And then the brother also offered a place and safe harbor for the children here in Chicago. There was a hate convention case. Fees were awarded by the district court for, among other things, saying it is in the best interest of the children that the mother have these fees. The father has refused to pay them. So we have filed a cause of action seeking to recover those fees from those we say are just as responsible as he is. Both fictitious interference with a custody order from the Slovakian court, as well as acting in concert with the non-custodial parent. And so the lower court here dismissed based on primarily on the case Whitehorse. And so we have appealed saying that we don't believe either Whitehorse was correctly decided or that it is distinguishable. How did I do? Very good. I'm going to jump in right here and address one issue of concern that I have. And that is, why weren't the defendants added to the hate case at the federal district court? Well, there's two things going on there. One is I didn't represent them at the time. Two, even if I had, I don't think I could have. The hate convention serves a different purpose. And mostly it's, for example, getting the kids back. We could not, for example, recover additional fees after the kids were already returned to Slovakia. Because the hate convention is concerned with getting the kids back to where the parents belong. And maybe I'm not aware of it. If the court and its researchers or you have teams of it, I have me. So if you found cases out there saying that some that non-custodial or the parents could be part of a civil claim in a hate convention case, I'd be happy to address that. But I'm not familiar with that. But it does allow expenses, doesn't it? It does. Expenses expended for having the children returned. So the flights and all costs associated. Isn't that correct? Yes. And that is what happened in this case. And in fact, that's one of the elements of our damages. We say those are the expenses we think should be reimbursed by those who paid for the kidnapping. Because the father is relying on the mother to pay for everything and refusing to pay. That being the case, we believe that Illinois law should extend liability as a matter of public policy. And I'll talk about the case in balancing public policy, that public policy requires everyone who is responsible, who offered substantial assistance, who paid for a kidnapping to then reimburse these expenses. If this mother paid for, simply paid the son's expenses as she is for everything else, then I suspect we wouldn't be here right now. But he refuses to pay and they aided and abetted. So they should pay because they're responsible. Mr. Koniak, I'd like to follow up on Justice Johnson's question. She was referring to the hate convention and then there's a federal statute, International Child Abduction Remedies Act, which your client sued under and obtained a judgment for the expenses that she incurred in obtaining the recovery of her children. But the question for us, when we determine whether to recognize a new cause of action or tortious interference with custodial rights, is if the legislature has already provided remedy, then we should be very hesitant to recognize such a new common law right. And here, as I understand it, and there's a case cited by your opponent called Rishmawi, R-I-S-H-M-A-W-I versus Vergara, which stands for the proposition that you can recover expenses from non-parents if they were involved in helping the parent abduct the child. And so if that's the case, if there's an avenue for recovery under the federal statute, then why should we recognize a new cause of action? I don't believe that there is an avenue under that statute, under ICARA, as I'm calling it, I-C-A-R-A. I don't believe it does. What about the Rishmawi case? I would have to review the case again, but I'm not aware that the holding in that case, perhaps I'm wrong, but I'm not aware that the holding in that case would forego an aiding and abetting claim against those who offered substantial assistance. I don't think that cause of action does exist. Perhaps I'm wrong. In other words, I think they're misreading the case, but I'd have to look at the case again, to be fair. Why should we recognize the cause of action when our legislature has refused to do so? Well, let me respectfully suggest that that's two questions. And let me take the second one first. The legislature has not refused to do so. The legislature has not addressed it. Okay, it has not addressed it. In other words, what I'm saying is the point is, under vitro, what we do is we balance the various public policy concerns at issue. In this particular case, the Illinois Supreme Court has never said that this cause of action does not exist. On the contrary, it has been very careful not to simply say a white horse is correctly decided. It has been very careful to parse out that we don't go too far in saying that just because a legislature has not addressed an issue doesn't mean that we don't have private causes of action. We, for example, cited vitro cited case law, which we went through in our brief. I think it's the Bogenberger case, for example. Here's one where the General Assembly has talked about what you can and can't do in terms of whistleblowing and the compact and guns, and then turned around and said, that doesn't foreclose us from recognizing a private cause of action. And that's the same thing here. There is no, in fact, the Bogenberger statute is even more on point than any cause of action or any statute. I have to go back and look at the ACARA again, to be fair, but any cause of action that could potentially be brought. The legislature never foreclosed this. Why would it? If the Illinois Supreme Court hasn't addressed the issue, why would the General Assembly? You're asking the General Assembly to read the cases and read into Illinois Supreme Court decisions and reasoning, things that the Supreme Court simply never said. If I was the General Assembly, I would look at this and go, why do I have to pass a statute? The Illinois Supreme Court is discussing this issue. And the Illinois Supreme Court does allow for causes of action. It does look at public policy involving, in this particular case, well, I'd like the Bogenberger case. You could talk about, I'm sorry, was that, I heard a noise, I'm sorry. The Bogenberger case, for example, we talk about social liability for alcohol. We say the other side, the lower courts, by the way, Judge Sherlock again, but just said. Hold on for a second, Justice Johnson. All right, go ahead. I actually assume that came from me. It usually does. But sorry about that. But anyway, if you look at that Bogenberger case, you look at it and you say, well, all right. Based on the reasoning that I'm hearing, there shouldn't have been permitted any sort of cause of action for social liability arising from alcohol just because it was hazing as opposed to a family event. The Supreme Court said, don't turn a blind eye to it. You look at the public policy concerns that are involved. That's what the vitro court said. And much more in our context. Why didn't the vitro court said the Whitehorse case is correct? That would have been the end of it. Because they said, no, you have to look at the balancing of the public policy concerns. What do we have here? We have somebody, I have to look at Akara again, but somebody who doesn't have a private cause of action against the individuals who paid for the kidnapping. We have somebody where a district court said that as a matter of policy, we want the mom to have the money to help raise the kids. What about that public policy? What about placing the burden on the parties who actually committed the wrong? And with that, let me ask you something. You're familiar with the Drolley versus Bruder, our Supreme Court's case from 1988. And they are the Supreme Court seems to. At least in my opinion, to be leaning your way a little bit there, because they, they, they actually say that an action for direct interference with the parent child relationship does not entail recovery for the type of harm asserted in that case. And the type of harm asserted in that case was the injury to the children. And that's what you're looking for today. You're looking at the you're looking to receive to recover cost. Correct. Correct. Expenses. Expenses. Yeah. I said cost, but you should be expenses. So, and that's different from what we had there with the Supreme Court didn't recognize that they didn't go as far to recognize the claim, but they actually do mention the claim. And simply seeing that under that claim, you can't recover for damages to the children or injury to the children. But, but it kind of left the door open that the types of claims that you're talking about may be recoverable. Do you want to respond to maybe help all of us? Sure, and thank you. Thank you for the softball. I appreciate it. The drill court. We're actually debating drill draw the I'm not actually sure. But that court actually made the distinction between direct and derivative with the veto court then slam shut. I'm not a Supreme Court justice, but I think the veto court got that one right. But the, but that's not what we're here for. What we're talking about is was a door open. I find that really interesting because if the door wasn't open, they would have simply said white horse controls. And what I found interesting is that in the lower court here, we had an emotional distress claim. Public figure, we had to drop it. We're not going to, we're not going to go there. But the lower court said that drill and veto particularly drill open the door to an emotional distress claim. I don't know how that's possible white horse was crystal clear that there is no tort of outrage white horse cannot stand consistently with the lower courts ruling in this case something's wrong. And what's wrong your honor is I think what you said, which is the drill court didn't slam the door shut it left the door open and said, let's take a look at the kind of causes action we're talking about the drill court for example cited coons KUNZ, which is a case out of the northern district applying Illinois law the year after white horse, where the court said, oh yeah, the doors are open. And granted it's a federal court case, but clearly based on the case law, people are debating the validity of the white horse case. And what white horse did was paint with too broad a brush. The court turned around and said in the end. Oh, they didn't really do any balancing they didn't do anything they just said if we're going to do something that the legislature is going to do it. But I'm saying that based upon vitro, particularly the bit about balancing public interest that that's not the law. That's not what the Supreme Court said we're supposed to do in this scenario. Supreme Court said balance the issues. Let me ask a question and throw it out there. If I may, because I'm going to run out of time in a minute. I want to throw an idea to put in your heads. We cited the cases in other jurisdictions saying, yeah, you know what, even those jurisdictions cited by the Illinois Supreme Court that said you can't recover for lost society do say you can recover for lost expenses. Making me wonder, by the way, what about CARA and other things, but I'll have to think about that. But we cited those cases. Where are the cases cited either by the lower court or my opponents that said, no, that's wrong. That's not the law. Because I haven't seen any. I haven't seen any in the briefs. I didn't see any in the lower court, I think. And by the way, I love to show up very much for other reasons. But this one, I think, just said, you know what, the public court's got to decide this because those cases, as far as I know, don't exist. You have better researchers probably than me. If you found some, I would love to talk about it. I'm aware of some jurisdictions. I don't want to lead with my chin and do my opponent's job for them. But I'm aware of some jurisdictions that wrinkle their nose a little bit more in this area than we do. Minnesota, for example. But even there, nobody ever said you can't recover expenses because it has nothing to do with custody orders. The defendants in this case weren't even parties to that case. They knew about it. They submitted things in there in the Slovakian case. They weren't parties to that case. So you look at this and you go, where is the case that says I'm wrong? Except for Whitehorse. Let me switch gears a little bit. So if you're not going to pursue the emotional distress, how do you proceed with the civil conspiracy? What would we do? Would you still proceed with the civil conspiracy? Yes, both counts one and two. The direct tortious interference claim and the in concert liability civil conspiracy claim. The cases were just the counts. Yes, we intended to proceed with both of those. Civil conspiracy is based solely on the tortious interference. Yes, I concede immediately that the same legal issues apply to both counts. Do you concede, Mr. Konyuk, if the tortious interference claim, if we determined a tortious interference claim fails, then does that by definition mean that the civil conspiracy claim fails? I do not concede that point. But thank you for clarifying that. No, we dropped the claim for one reason, in that she doesn't want to go public or let her get her medical records. I don't concede that. You may have misunderstood my question. My question is, if we determine that the tortious interference claim fails, in other words, if we decline to recognize a claim for tortious interference with custodial rights, does that by definition mean that your civil conspiracy claim fails? Oh, I apologize. I thought you asked whether that does that mean the emotional distress claim fails. I apologize for misunderstanding. Not necessarily. It depends on your reasoning. You could say that. Well, if we determine if we determine that if we determine not to recognize a claim for tortious interference with custodial rights, that would be the reasoning. So hypothetically, does that mean that your civil conspiracy claim fails? It would fail unless the reason for dismissing the tortious interference claim in count one has to do with direct obligations under the custody order, as opposed to aiding and abetting somebody else's obligations under the custody order. Otherwise, yes, they would both fail. Well, let me make it a little bit more specific. If we determine not to recognize a claim for tortious interference with custodial rights because there is relief available to you under ICARA, the federal statute, does that mean your civil conspiracy claim fails? Yes, because if there is relief under ICARA that can be brought against non-custodial parents, people who acted in concert, then yeah, it would have to, wouldn't it? I mean, logically speaking. But I'm sitting here admitting with egg in my face that I'd have to go back and look at that. So I'm not sure that that's true. Thank you. So since you've already received an order for reimbursement of costs in federal court against the husband in this case, then why bring this? Well, I understand why you would bring this case. However, if you also receive the judgment in this case, isn't that a double enhancement? Well, no, because obviously we're only entitled to one award, to be sure. If, for example, the defendants wanted to bring in the non-custodial parent as a party on a cross or a third party, sure, they'd be welcome to do it. And they would then get reimbursed from them. Under no circumstances, you would receive twice our expenses. That's to be sure. But there are, let me go back to it on your point, Justice Johnson, about the Bogenberger case where it said, let us not turn a blind eye to what is going on here. And I think that the other side is asking us to do that. I'm literally outside the briefs, but we know what is going on and why this father is not paying. The father has an $800,000 debt, he said, to his mother. And there are quirks in Illinois law on the ability to collect from someone who says, I don't have any money and I'm just being gifted money. Let us not turn a blind eye to that. I'm going to stop you here. You do have five minutes on rebuttal. Thank you. Do either of the other panel members have any questions before the appellee makes his presentation? Okay, thank you. Counsel for appellee, you may proceed. Thank you. I think you raised some very good questions here, which are fatal to the plaintiff's case, which is, first of all, why do we need this statute to apply when Illinois has prohibited such claims in the past if there are alternate remedies available? And according to the plaintiff, the defendants here did harbor the children, so I think they absolutely could have been brought within the act, the ICARA, and they chose not to do it. And he's also mentioned the fact in his briefs that there are criminal penalties for abduction, you know, state penalties. And there's no question about that. So there are both criminal and civil remedies already available that they could have pursued against these defendants. And I think since he refers to what's really going on here, all he's really seeking here is, I mean, there's no question that he's got a judgment against Jeremy Hulsh. And because he can't collect it, he's going after family members who he thinks are more solvent. And that is the reason for this. Now, I think the trial court cited and is basically being dispositive the Whitehorse v. Critchfield case. And I think it is dispositive. That was also an abduction case. It's not a heck of a lot different from this case. Mr. O'Donnell, I just want to be clear about something really quickly here. So you admit that your clients were involved in harboring the children. No, no. I'm saying that that's the allegation of the complaint. We would absolutely deny that. Okay. But to the extent he's claiming… Because the way you stated it earlier, it sounds like you had given us an admission here that they were somehow involved in that. Because I think that that's going to be something that will be dealt with later in the case as to whether or not they had any involvement. Yeah, no. I would absolutely deny that. Okay. And in fact, it's an interesting point that he brings up. He's basically complaining and suggesting there should be some negative inference from the fact that Maya Halsh, who is the mother of Jeremy Halsh, is giving money to her son and is supporting him financially. And yet… What about the $800,000, though? What about it? I think a lot of that has gone to the legal defense of the claims that Vera brought against… Right, but you just said… I didn't mean to cut you off, and I apologize for that. I just want to come back to where we are. You just said that he's making these allegations that she's supporting him and giving him money. But it is correct. There's no doubt about the fact that she loaned him or gave him, whatever the case might be, the $800,000. Correct? That's not… Generally, I don't know about the exact figure, but I think there's no question that she gave money to her child, like any parent might. Any parent might give them $800,000, okay. Well, I mean, if they haven't. But what I was saying is that Whitehorse was also an abduction case. And the court in there specifically referred to some of the same points that Mr. Kaniak points out, which is there are criminal statutes against abduction. And rather than making an inference that the court would therefore impose civil penalties, that court came to the opposite conclusion. That since the court, since the legislature specifically considered what remedies should happen for abduction and enacted criminal sanctions, the fact that it chose not to impose civil sanctions at best leaves the issue up in the air for the legislature to determine and not for the courts, because clearly the legislature chose not to do that. I think I heard Attorney Kaniak say that the, I guess the ball is first with the courts and then the legislature falls. You know, you justices know a lot better than me where the fine line is between making law and just interpreting the law, and I'm not going to try and approach that one. But certainly what the courts have said repeatedly in multiple Illinois cases is that in this kind of case where there is such a potential for abuse of this kind of cause of action, in that case, the Illinois courts should absolutely look to the legislature for guidance and that the only guidance they have so far from the legislature is that there's no such civil penalties which have been enacted. And that is true 38 years from when Whitehorse first raised that issue. So there's been decades and decades for the legislature or the courts to reverse that decision, and it hasn't been. And in fact, the Supreme Court has absolutely endorsed the views of Whitehorse in the Drow case. Two years after Whitehorse, they held that there was no cause of action for a parent's claim of loss of a child's society and companionship. Let me ask you about that. So how do you interpret Drow where the Supreme Court says it was not considering the nature or extent of recovery in cases based on the direct interference with parent-child relationship? Wouldn't that leave the door open for such poor consideration despite the misinterpretation of that statement in those cases that follow? Your Honor, the same year that the court decided Drow, they decided a case called Doe versus McKay. And in that case, the court said it doesn't matter whether it's a direct injury or an indirect injury. And a direct injury is clearly, I mean, many of the cases such as Whitehorse and such as some of the other cases that the Illinois Supreme Court had dealt with have been direct injuries, just like they're claiming here. Where, for example, there was a case involving multiple cases involving therapists who supposedly turned children against their parents and that, you know, I mean, all those things, any kind of injury like that is gonna generate some expenses. But the Illinois courts have never found that that's compensable. And in fact, I think that notion is consistent with other aspects of Illinois law, namely the fact that the norm in Illinois is that even the losing party in a case isn't responsible to pay the other side's attorney's fees or costs unless there's a direct injury. There's no statute or contract that provides that. And I think that that's even more, going back to what's really happening here, there, you know, the plaintiff is trying to hold people responsible to pay for a prosecution against someone else in cases where they were never charged. And I mean, it's incredible to me that you could just say, you know, we know you weren't involved in the case, you weren't a defendant, you didn't have any control over the case, but because someone else lost the case, you know, we're going to hold you responsible for them. I mean, we're not talking about, you know, chasing a child across state lines, we're talking about countries, through multiple countries here that they assisted, you know, with, you know, what the appellant is alleging is that they assisted with the abduction of this child. Through Canada, through, you know, here to the United States, down to Florida. I'm at a loss for words with respect to where they started at this point. But, you know, paying for private, private planes, rental cars, things of that sort. So this is more than just, you know, I'm helping my son out here. It sounds like they went through great lengths to assist with, you know, secreting this child. Well, of course, this never reached a point of evidence, of evidentiary determinations. We certainly would deny those things. But I still think it's very similar to Whitehorse, in that in Whitehorse, the defendants put a kid on a plane, took her to another state, hid her, tried to adopt her. So I don't know that there's a big difference between moving someone from Europe to the United States versus moving people between the states. So, you know, it's a colorful addition to the case, but I don't see where it rationally makes any change in it. And all the cases, you know, as recently as 2009, certainly, in the Zabunka versus Motorcoast Industrial case, the Northern District of Illinois, 23 years after Whitehorse, said that is still the law in Illinois, after looking at the history of cases. Albert versus Illinois Department of Mental Health also was a federal case that concluded the same thing. And in the Vitro case is another Supreme Court case that absolutely agreed with Whitehorse in its conclusion that in order to recognize a new claim like this, let's wait to see what the legislature actually has to say. And in 20 years since then, the legislature... Mr. Ardo? Yes. You know, I want to follow up on the point, you know, certainly a reasonable jury could conclude that but for the defendant's financial assistance, the father would not have been able to abduct the child as he did. But let's put that aside for a moment. You cited the case of Brishmawi versus Vergara. And you say that the court there interpreted ICARA to allow a claim for recovery of expenses to recover a child who has been abducted, that such claims are allowed against non-parents. And if in fact, there is a statute that allows the plaintiff here to recover, then that would counsel against recognizing a cause of action for tortious interference with custodial rights. Now, when I put that question to Mr. Konyak, he says that the Brishmawi case does not support the proposition that you can recover those expenses from a non-parent. So I want to get your response to that. Thank you for raising that. My response is that we actually didn't cite that case. I believe that was Mr. Cullen who represents. This is an area that he specializes in, I think.  But it's certainly, I did look at this at ICARA, and it says anyone who basically is involved in, you know, abducting a child and moving them internationally can be found to be in violation of the act and the court can assess expenses against them. And that didn't happen here. Absolutely nothing of that sort has ever been found with respect to these defendants. There's no question that Jeremy Hulsh was, you know, found to violate the statute and that the expenses against him may have been properly assessed because there was a case against him. In this case, they are trying to hold. It could be made that if the case were allowed to move forward, that they would have an opportunity to prove that. To prove their involvement. Right, but I think what, you know, part of the problem here is that they're trying to really extend a federal statute based on an international convention into some kind of state law, common law offense. And I mean, there's absolutely no basis for that when the courts have said in Illinois time after time, we're not going to recognize that. You want to prosecute the people under federal law and federal court? Go ahead and do it. But there is no such claim under Illinois law. And one of the reasons there's no such claim is because it is amply addressed by other laws. We don't have to start creating a whole bunch of other cases to address that. And one of the other points I would like to make. Is it the the expansion of law that the plaintiff is urging in this case? You know, a kidnapping and abduction case is a nice, juicy, exciting example of some kind of interference with someone's rights. But he's not. But he's arguing for a general opening up of that statute. So it's going to include all the kinds of cases that courts have dealt with where, you know, a therapist alienates someone. Or you agree, though, that I'm sorry. But you agree, though, that are. We address this. This is Walker. Your screen was frozen. Can you restate your question, please? Oh, maybe. OK. Maybe I was the one because I just got a note on my system saying my Internet was acting up. No, my question, Mr. O'Donnell, was that you agree that our Supreme Court has not directly and head on address this issue that we're being asked to address. No, I would not agree with that. They haven't addressed it in exactly this context. But if they say there's no cause of action, period, then you're not going to take piecemeal damages and say, well, you know, for expenses, we'll allow it, even though there's no cause of action. I think it naturally follows from this wave of decisions for the last 38 years that if you're going to. If you're not going to recognize the cause of action, then it doesn't matter what the damages are. There is simply no claim there on which the base damages. But this is a continuing issue that I know that we're running over time, but it's a significant issue. This child abduction and with the increased mobility of people and parents and taking children across the world. Shouldn't there be some compensation for the parent who then has to track down and hire experts to find these children? You know, what's what's fair about them having to go through this, you know, this expense in order to locate the children and then be unable to recover? Sorry, that's exactly what the federal court decided, which is Jeremy Hulsh violated the act and he's going to pay the fees. And whether, you know, like any case, whether you're able to collect the judgment is not a measure of justice. It's you can only go so far with that. And, you know, simply trying to foist his activities on to his relatives because some of them may have may have supported him financially when he was broke or may have supported his legal defense. Is is not at all an equivalent that they therefore have to pay the expenses that were specifically assessed against him. They were never assessed against. Any additional questions from the panel? Thank you very much. Thank you. Your Honor. Yeah, there is another defendant here. Oh, he's representing apologies. I'm sorry, Attorney. State your appearance for the record as well. Your Honor's. Good afternoon, Stephen Cullen, and I represent our in Hulsh. The brother of Jeremy Hulsh. I hope your honor's you can hear me. Okay. Unfortunately, my flight was canceled and I'm still overseas. So I'm on video by zoom and audio through my phone. There's just nothing I could do about it. We can hear you fine. Thank you, Your Honor. The the admonition, the admonition in in Whitehorse is prescient here. I'm not going to rehash what learned counsel for both sides have already said, but at the end of Whitehorse. The comment was that the area, this area that we're in your honors of custodial interference. Imposes a large possibility of a multiplication of lawsuits. And for these reasons, the Court of Appeals decided that the civil sanction in Illinois for interference is better addressed by the legislature. And what we say respectfully is if you look at the four key cases, that would be Dimec in 1984, Whitehorse in 1986, Drowell in 1988, and then probably the most inclusive federal diversity case, Lindgren in 1995. There is no inconsistency in the positions advanced and there is no inconsistency in in Drowell. The petitioner. She could have included the mother, Maya Hulsh, and she could have included Orrin Hulsh in the federal Hague case. She didn't. She proceeded just against Jeremy. She got a return to Slovakia of the children. And then after some difficulty and second time round, she got a money judgment, which she has against Jeremy. What Whitehorse says is there is no other civil claim that she can bring in Illinois. To address. Damages now. I do want to just. Unfetter this issue of damages, because what the petitioner, we say, is trying to do the appellant here is pivot on what he's actually asked for. We're at the motion to dismiss stage. The verified complaints, as you know, is pages A16 through A28. And if you look, for example, at A25, A26, A27, they are asking for damages for emotional harm and punitive damages and pecuniary damages. Now, what they're trying to do in this appeal is pivot away from that. And at page 18 of their brief, they say the common thread is that our Supreme Court has refused to recognize the cause of action for damage to the parent-child societal relationship. Here's the problem, Your Honours, with that. There is no tortious interference claim, which is the claim they've made, as stated in Whitehorse. And Drow, at keynote two, specifically goes out of its way to say, but see Whitehorse, denying the parent's cause of action for loss of filial society, resulting from alleged acts intended to induce child to abandon parental home. So Drow addresses Whitehorse. If it's not the tort of custodial interference, which Whitehorse says doesn't exist, and if they are seeking damages, they have to have a cause of action. What is the cause of action? If it's not tortious interference, it has to be something else. We don't allow in this country freestanding damages without a cause of action. Can you address the civil conspiracy to intentionally inflict emotional distress? Yes, Your Honours. So the third count they have voluntarily dismissed at this stage, and that is not before Your Honours today, count three, the IIED case. The conspiracy case is specifically addressed in Whitehorse at keynote one. And the court explained that you can't, if you're seeking tortious interference, you cannot also have a civil conspiracy claim built on something for which there is no action in the state of Illinois. So civil conspiracy as to what? Again, if it's not tortious interference, then what is the claim? But the appellant is stuck, for want of a better word, with his verified complaint. He's not just seeking pecuniary damages. He's pivoting now and trying to say, I want the court to establish a tort based on pecuniary damages. But there is no such claim under Illinois law. As in all these cases, Your Honours, I'll just say this and then I'll stop because there's no point in gilding the lily when it's already been discussed at length by learned counsel for both sides. But you cannot say that we just want pecuniary damages, which is what they're now saying in their appellant brief, to try to get round the problems they have in their verified complaint at the motion stage. Of course, the plaintiff in the case has the huge liberal ability to say whatever they want in a complaint. And we have to accept as true what is in the complaint at the motion to dismiss stage. But no matter what they say, they either have to agree it's tortious interference with custody, which is not a valid cause of action under Illinois law. Or if it's not that cause of action, what is it? And so for those reasons, representing Orrin Hutch, Your Honours, I'd respectfully ask for the court to affirm the decision of the lower court. Colin, very quickly, I'd ask your colleague, Mr. Ortewer, about the Rishmawi case, and he indicated you cited it as an error. Your opponent says that that doesn't stand for the proposition that you cited for, that it does not support the proposition that non-parents can be named as respondents under ICARA. Would you respond? So, no problem responding, Your Honour. I had a bit of a nervous breakdown when I heard that, and I pulled up my citations, and it's not the case I cited. But it is correct that to get relief under ICARA, you have to have been named as a respondent in the underlying Hague case, but that falls to the petitioner in the Hague case to decide to do that. It is also correct, Your Honour, and I believe this is where you're headed, that you couldn't co-opt Maya Hulsh and Orrin Hulsh at this stage into an ICARA fees case. It's a very unusual statute, as you know. It's a one-way fee-shifting statute under federal law. There's a whole kind of policy reason behind it, which I won't go into. But because Vera Hulsh elected not to bring in Orrin and Maya in the Hague case, which she could have, therefore there is no claim under ICARA against Maya and Orrin. Any additional questions? No. Thank you very much, Attorney Cullen. And again, I apologize for not giving you your due time. No problem. Thank you. Thank you so much. Attorney Kenya. Okay. I think I can do this fairly quickly. Five minutes. First, the issue of, well, what we're really after is, why aren't we going after the person who's really at fault? That argument would be true for every single aiding and abetting cause of action in the state of Illinois in any context. There's always somebody who either has a judgment or could have a judgment against them. We're not ready, I think, to eliminate every aiding and abetting cause of action in the state of Illinois. That's not the case. Second, the Drill Court. We just heard that the Drill Court addressed Whitehorse. The Drill Court also addressed Coons, which was the year after Whitehorse, saying those cases are different because Whitehorse involves loss of society. Where we have a disconnect is, I keep hearing it defined by my opponents as tortious interference. Yeah, it's tortious interference, but that's not the point. The point is, tortious interference with what? In other words, are we dealing with loss of society? All I keep hearing is loss of society. The point here in Coons, made by the Drill Court, was that those cases were different. All right? So Mr. Ordower said, for example, he found this incredible. Well, our Supreme Court relied on New Hampshire law. New Hampshire allows this cause of action because there's a difference between expenses and loss of society. Vitro Court cited Missouri law. Missouri allows this cause of action because there's a difference between expenses and loss of society. Texas, not exactly the bastion of liberal pleading, allows this cause of action. Even holding, of course, you can get your attorney's fees, too. All right? This shouldn't be incredible, since I'll go back to my first question. What case, aside from Whitehorse, ever said you can't do this? And in fact, Whitehorse didn't say this. Whitehorse specifically distinguished a slew of cases saying those involve aiding and abetting, or it involves people who are in acting in concert with noncustodial parents. Our case. So even Whitehorse wouldn't have come down the way that it did. That brings me to the last point, and I want to credit Mr. Cullen for pointing this out. I have poured through these briefs in the last 10 minutes. Justice Taylor, I don't know that case that you're citing. I don't see it cited. I don't see it discussed. And I would like, before we rule on the issue, I'd like an opportunity to look at the case and address it. To be fair, I think I didn't say it doesn't apply. What I'm saying is I find it hard to believe that that's the cause of action because I didn't remember the case. And I was saying I got egg on my face. But now that I've looked it over, I don't see that cited by anyone. What am I missing? And I'd like an opportunity to address that if you're going to rely on that case, if I may. So please just keep that in mind. I find it hard to believe. I don't agree with Mr. Cullen that the... Would you like to cite, counsel? Yes, please. Thank you very much. I have 540 FSUP 3rd 1246-1273-2021. Okay. I don't know where to leave it with that, except to say that my understanding is that I could not, or I should say prior counsel, could not have named the mother and brother in the hate convention case. The parent had seized control and the order was sufficient to have the parent return the kids. And as soon as the kids are returned, that's the end of the hate convention case, as far as the district court is concerned. Except to award expenses, saying, among other things, that it is the policy that we want to award the mother the fees because she can use those fees to care for the children. Which is exactly the kind of reasoning our Supreme Court would use in vitro, where it says you balance the issues. Anything else I say would be repeating myself. Are there any additional questions? So, I'm just going to read from Article 26 of the hate convention. In pertinent part, where appropriate. Let me just start over. Upon ordering the return of a child or issuing an order concerning rights of access under this convention. The judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child or who prevented the exercise of rights of access to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses. Any costs incurred or payments made for locating the child, the possible legal representation of the applicant, and those of returning the child. Now, that comes from Mendoza versus Silva. 987F2-910-913-2014. Are either councils familiar with that? Yes, Your Honour. Stephen Cullen, I am familiar with that. And that article, Your Honour, that you read from the treaty is mirrored in 22 USC 9007. And that would, could have applied to anyone who had been named as a respondent in the Hague case before the federal judge in the Northern District. For whatever reason, the petitioner elected not to include the brother and mother as respondents, and she has to rest upon that. That was her strategic decision. There are many Hague cases around the country. They do tend to be federal cases. Most of these cases are brought in federal courts, although states and the federal have concurrent jurisdiction. But there are many cases where there are multiple respondents, often the alleged taking parent, that parents. In that this is counsel's rebuttal, I'm going to cut you off there and allow counsel to address. On that one issue, I think this is why we have the rule of law that says you waive an issue if you don't raise it below. This is not raised below. This is the first time I'm hearing it. I have to take counsel's word for it that what he says is true. What I didn't hear was either counsel say, by the way, we didn't raise this issue in our briefs, despite what we heard. So forgive me for being a little cynical. I would like the opportunity to test for myself whether what counsel concludes is true, that we could have raised this issue in the Hague Convention case. Having said that, I would like to see the case law about that. I have my doubts, but I have to admit, not having had the need to address the issue because it wasn't raised, I think it would, in fairness to my client, I think justice would be done if I did have the opportunity to address that issue. But that's all I have to say. Thank you. Thank you very much. And unless there's objection from the other panel members, I would like to allow counsels to supplement their briefs regarding those two cases. And if we could limit it, do you think you can do it in five pages? Yes, Your Honor. Five there? All right. Very well. And in light of the holidays, how much time do you think you have? If I may, I have personal issues involving aging parents, aging in-laws. I have a trial in the middle of January. Wow. I'm sorry to say, can I go to the end of January? I'm really sorry about that. Pardon me one second. All right. Can you have it to us by January 26th? Yes, Your Honor. Attorneys for appellees? Yes. Stephen Cullen, yes, Your Honor. Thank you. Why don't we do this, have the appellant file supplement by the 26th and then give the appellees 14 days in which to file a response there to? Justice Walker? Yeah, I guess the concern was that I just thought maybe each side should just respond, even simultaneously. I don't know that you necessarily need to act as if they're briefing a new case and respond back and forth to each other. Just both of them provide what they're going to provide and we'll decide the case accordingly. That's fine with me. Okay. Justice Taylor? That's fine. Okay. Our senior judge has spoken. Thank you. Thank you very much. Thank you very much for your learned presentations on today. You've given us quite a bit to consider and we look forward to reading your supplemental briefs. Thank you for your time.  Thank you, Your Honor.